J-S50044-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.A. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.A., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | No. 874 WDA 2019 |

Appeal from the Order Entered May 17, 2019
In the Court of Common Pleas of Somerset County Orphans' Court at
No(s):  4 Adoption 2019

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.A. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.A., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | No. 875 WDA 2019 |

Appeal from the Order Entered May 17, 2019
In the Court of Common Pleas of Somerset County Orphans' Court at
No(s):  5 Adoption 2019

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED SEPTEMBER 27, 2019

Appellant, K.A. (Father), appeals from the orders entered May 17, 2019,

that involuntarily terminated his parental rights to his biological children, A.A.,

_____

[*] Retired Senior Judge assigned to the Superior Court.

born in December 2015, and M.A., born in January 2017, (collectively, Children). We affirm.

The facts and procedural history underlying this appeal are as follows. Father and the mother of both Children (Mother) have never been married to each other. Somerset County Children & Youth Services (CYS) removed A.A. from Father's care in December 2016, when A.A. was less than one year old, due to drug use in Father's home and a voluntary safety plan was implemented under which Father and Mother were permitted to have supervised contact with A.A. CYS received emergency physical and legal custody of M.A. shortly after he was born and M.A. has never been in Father's care. On January 18, 2017, Children were adjudicated dependent. A.A. was placed with his maternal grandmother and her partner and has lived with them since that time. M.A. was placed with the sister of the maternal grandmother's partner and her husband and has lived with them since that time.

The dependency orders stated placement goals of returning Children to a parent or guardian with adoption as a concurrent goal, ordered Mother and Father to "complete a drug and alcohol evaluation and follow through with treatment and counseling recommendations and submit to random drug screens," and ordered Mother and Father to "participate in scheduled visits with their children." A.A. Adjudication of Dependency at 2, 3; M.A. Adjudication of Dependency at 2, 3-4. On April 24, 2018, following a permanency review hearing, the juvenile court ordered that the permanent

placement goal for Children be changed to adoption. A.A. Permanency Review Order, 4/24/18, at 2; M.A. Permanency Review Order, 4/24/18, at 2. In those permanency review orders and subsequent permanency review orders, the court found that Father had made "no progress" in alleviating the circumstances that necessitated Children's removal. A.A. Permanency Review Orders, 4/24/18, 9/25/18, 12/18/18, at 2; M.A. Permanency Review Orders, 4/24/18, 9/25/18 at 2.

On February 25, 2019, CYS filed petitions to terminate Father's parental rights to both Children, asserting that his parental rights should be terminated pursuant to Sections 2511(a)(1), (2), (5), and (8) and Section 2511(b) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), (b).[1] The trial court held a consolidated hearing on the petitions to terminate Father's parental rights on May 17, 2019, at which Father was represented by counsel and appeared by telephone, as he is presently incarcerated at SCI Somerset. At the hearing, Children's guardian ad litem from the dependency proceedings represented to the trial court that there was no conflict between Children's best interests and their legal interests, the parties did not object to her representing Children in both capacities, and the trial court found no conflict and appointed her to act as both guardian ad litem and legal counsel for Children. N.T. at 16-19. CYS

_____

[1] On the same date, CYS also filed petition to terminate Mother's parental rights. On May 13, 2019, however, Mother filed petitions for voluntary relinquishment of parental rights to both Children.

presented testimony from its caseworker and a licensed forensic psychologist and introduced in evidence the files from the dependency proceedings. Father also testified. The guardian ad litem and legal counsel for Children examined the witnesses at the hearing and argued in support of the petitions to terminate Father's parental rights.

The caseworker testified that Father had very little contact with A.A. after A.A. was removed from his care in December 2016 and very little contact with M.A. at any time in M.A.'s life. N.T. at 37-46, 65, 68-69. In the more than two years between the dependency adjudications and the hearing, Father had seen Children a total of only approximately five hours. Id. at 42-43. Father was incarcerated at various times during this period, but did not show up for scheduled visits with Children or make any attempt to visit Children when he was not in prison and never inquired about how Children were doing. Id. at 37-39, 41-46, 57, 65, 67-69. The caseworker testified that at the two most recent visits, in October 2017 and May 2019, no parental bond was observed between Father and Children. Id. at 41-42, 49-50.

The caseworker also testified that Father did not comply with the dependency adjudications' requirements concerning treatment of his drug abuse. N.T. at 35-37. Father underwent a drug abuse evaluation, but did not comply with the recommendation of inpatient treatment even though such treatment was immediately available. Id. at 35-36. In addition, Father refused to take drug tests on several occasions and the only drug test that

Father took was positive for amphetamines. Id. at 36, 57; In re A.A. Ex.G; In re M.A. Ex.H.

The caseworker testified that Children are being well cared for and are loved by their foster parents and that they comfortable in their foster homes. N.T. at 46-50. Children were not placed in the same home because the maternal grandmother did not believe that she could care for both Children given M.A.'s special needs, but the foster parents, who live near each other, have Children visit each other at least four times a week and intend to continue that contact. Id. at 49, 61-62.

The forensic psychologist testified that he conducted psychological evaluations of Children's relationship with their respective foster parents and of the foster parents' parenting and stability. N.T. at 76-77. The forensic psychologist testified that both sets of foster parents showed good parenting skills, provided stable homes, and understood and were able to meet their child's special needs and obtained services for those special needs. Id. at 78-82. He further testified that Children interact well with their foster parents and opined that "there would be the likelihood of a high level of psychological detriment for both boys if they were to be removed from their respective foster families." Id. at 79-82. The forensic psychologist did not evaluate Children's relationship with Father, but opined that if Children had only a total of five hours of visits with Father, "it would be virtually impossible for children to establish any sort of meaningful relationship." Id. at 83, 85, 87.

Father testified that he was incarcerated from June 2017 to November 2017 and from February 2018 on. N.T. at 94-98. Father admitted that he did not visit Children when he was out of jail between November 2017 and February 2018 because "[i]t wouldn't have been safe for me to come and visit my children at that point in time." Id. at 96. Father testified that he is presently serving a sentence of three and one-half to eight years' incarceration for possession with intent to manufacture or distribute methamphetamine and that the earliest date that he could be released is March 15, 2021. Id. at 107, 116. He admitted, however, that even after his release he would not be able to care for Children because "it's going to take me years to get stable myself" and that "I'm not under the assumption that I'm – I'm going to ever be able to, um, provide for them or have them live with me on a full-time basis." Id. at 108-09. Father also admitted that he could not say that Children were bonded with him and that at the May 2019 visit A.A. did not know who he was. Id. at 103-04.

At the close of the hearing, the trial court entered orders in both cases terminating Father's parental rights to Children under Sections 2511(a)(1), (2), (5), and (8) and Section 2511(b). In re A.A. Trial Court Order, 5/17/19; In re M.A. Trial Court Order, 5/17/19. The trial court found that in the more than two years since the dependency adjudications, Father did not make a good faith effort to be involved in Children's lives and spent a total of only approximately five hours with them. Trial Court Findings of Fact and

Conclusions of Law at 7, 14. The court found that Father had not worked to remedy the conditions that led to the adjudications of dependency and was unable to care for Children and would remain unable to care for them. Id. at 4-5, 10-11. The court further found that the foster parents were providing stable and appropriate homes for Children, that Children have bonded with their foster parents, and that there is no parent-child bond between Children and Father. Id. at 8-10, 16-17. Father filed timely separate appeals from the two termination orders, which this Court sua sponte ordered consolidated.

Father presents the following single issue for our review:

Whether the trial court erred in terminating the parental rights of K.A., birth father, despite his efforts to have physical contact with his children, physical contact having been denied by the Department of Corrections?

Appellant's Brief at 4.

Our standard of review in these appeals is clear:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

In re B.J.Z., 207 A.3d 914, 921 (Pa. Super. 2019) (quoting In re R.N.J., 985 A.2d 273 (Pa. Super. 2009)); see also In re K.Z.S., 946 A.2d 753, 756-57 (Pa. Super. 2008). We conclude that the trial court's findings are amply

supported by the record and that it did not err in holding that the requirements of Section 2511 of the Adoption Act for termination of parental rights were satisfied.

Under Section 2511, the courts must engage in a bifurcated analysis prior to terminating parental rights. B.J.Z., 207 A.3d at 921; In re G.M.S., 193 A.3d 395, 400-01 (Pa. Super. 2018). Initially, the focus is on the conduct of the parent, and the party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies one of the statutory grounds for termination set forth in Section 2511(a). B.J.Z., 207 A.3d at 921-22; In re D.L.B., 166 A.3d 322, 326-27 (Pa. Super. 2017). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b), a determination of the needs and welfare of the child under the standard of best interests of the child. B.J.Z., 207 A.3d at 921; G.M.S., 193 A.3d at 401.

Father argues that the trial court erred in finding that there were grounds to terminate his parental rights under Section 2511(a) because the evidence showed that he had made efforts beginning in May 2018 to have visits with Children and that his lack of contact with Children in the year before the hearing was caused by the Department of Corrections, not by lack of effort on his part. We do not agree.

The trial court terminated Father's parental rights to Children under Sections 2511(a)(1), (2), (5), and (8). Only one ground for termination under Section 2511(a) need be shown to support the termination of parental rights, however, and we therefore need only agree with the trial court as to one of these subsections, in addition to Section 2511(b), in order to affirm. B.J.Z., 207 A.3d at 922; D.L.B., 166 A.3d at 327. We conclude that the evidence was sufficient to support termination under Section 2511(a)(2).

Section 2511(a) (2) provides, in relevant part, as follows:

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: . . .

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2). This ground for termination does not require a showing of affirmative misconduct by the parent; incapacity of the parent to perform parental duties that cannot be remedied is sufficient to support termination of parental rights. B.J.Z., 207 A.3d at 922; D.L.B., 166 A.3d at 327. Incarceration that prevents a parent from providing care for his child for a lengthy period can constitute an incapacity to provide essential parental care under Section 2511(a)(2). In re D.C.D., 105 A.3d 662, 677 (Pa. 2014); In re Adoption of S.P., 47 A.3d 817, 828-30 (Pa. 2012).

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

S.P., 47 A.3d at 830.

The evidence at the hearing amply demonstrated Father's incapacity to provide essential parental care, that his incapacity deprived Children of parental care and that his incapacity will not be remedied. A.A. was removed from Father's care as a result of Father's drug problems and inability to provide a safe home and both Children were placed in foster care as a result. It was undisputed that Father remains unable to provide any parental care to Children and will be unable to care for them for an extended period well into the future. Not only is father incarcerated until at least March 2021, he admitted that he will not be able to care for Children for "years" after he is released and that he probably can never provide a home to them. N.T. at 108.

Father's belated attempts to have contact with Children during his most recent imprisonment do not show that his incapacity to provide essential parental care has been or can be remedied. This evidence therefore did not preclude the trial court from terminating Father's parental rights under Section 2511(a)(2). D.C.D., 105 A.3d at 664-66, 677 (trial court did not err in terminating parental rights under Section 2511(a)(2) where parent would be

- 10 -

incarcerated for at least five more years, even though parent had sought contact with the child and the agency had impeded that contact).

The trial court likewise did not err in finding that the requirements of Section 2511(b) were satisfied. Section 2511(b) provides, in relevant part:

> (b) Other considerations.—The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b). Under this section, the trial court is to consider intangible factors, such as love, comfort, security, and stability, whether the child has any emotional bond with the parent, and, if such a bond exists, the effect on the child of permanently severing the parent-child bond. B.J.Z., 207 A.3d at 922; In re C.M.S., 884 A.2d 1284, 1287 (Pa. Super. 2005).

The trial court considered these factors and found that Children's foster parents have provided them with love, appropriate care, and stability, that Children have formed attachments to their foster parents and that removal from the foster parents' care would harm Children. Trial Court Findings of Fact and Conclusions of Law at 8-10, 16-17. The trial court further found that there was no bond between Father and either child. Id. at 16. All of these findings are supported by testimony at the hearing. N.T. at 41-43, 46-50; 78-82, 87, 103-04. Indeed, Father does not argue that the trial court made any error in evaluating Children's best interests under Section 2511(b).

For these reasons, we conclude that the trial court did not err or abuse its discretion in finding that statutory grounds for terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) were established through clear and convincing evidence and that termination of Father's parental rights would best serve Children's developmental, physical, and emotional needs and welfare. Accordingly, we affirm the trial court's orders of May 17, 2019.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2019